IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

ISAAC L. GADDY,

    Petitioner,

v.                                                                        CASE NO. 1:13-cv-158-MP-GRJ

JULIE L. JONES,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1.)  The Respondent filed a response and an appendix with relevant portions of the state-court record.  (Doc. 13.)  Petitioner filed a reply.  (Doc. 16.)  Upon due consideration of the Petition, the Response, the Reply, and the state-court record, the undersigned recommends that the Petition be denied.[1]

### Summary of State Court Proceedings

On November 30, 2008, Petitioner was charged with one count of aggravated assault on a law enforcement officer, one count of assault, and one count of criminal mischief.  (Doc. 13-1 at 97-98.)  After a jury trial, the jury found Petitioner guilty as to all counts.  (Doc. 13-1 at 122.)   He was sentenced to twenty years imprisonment.  (Doc. 13-1 at 130.)

Petitioner initiated a direct appeal of his conviction and sentence to the First District Court of Appeal ("First DCA") on January 28, 2010.  (Doc. 13-1 at 156.)  The First DCA affirmed his judgment and conviction on May 11, 2011, without written

---

[1]Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

opinion.  (Doc. 13-5 at 19.)  Mandate issued June 7, 2011.  (Doc. 13-5 at 21.)

Petitioner filed a motion pursuant to Fla. R. Crim. P. 3.850, challenging his conviction, on January 25, 2012.  (Doc. 13-5 at 50-59.)  He filed three amended motions.  (Doc. 13-5 at 63-73; 75-108; 114-168.)  The trial court denied all grounds raised without evidentiary hearing.  (Doc. 13-5 at 170-175.)  Petitioner appealed the denial, and the First DCA affirmed the trial court's denial on July 1, 2013.  (Doc. 13-5 at 227, Doc. 13-6 at 31.)  Mandate issued July 29, 2013.  (Doc. 13-6 at 33.)  Petitioner subsequently filed this petition.  (Doc. 1.)

### Section 2254 Standard of Review

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1), (c).  Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted.  *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999).  Federal habeas courts are precluded from reviewing the merits of procedurally

defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered. *Id*. at 1302, 1306.

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), the petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct. *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir.2011); *see* § 2254(e) (1). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow,* ___ U.S. ___, 134 S.Ct. 10, 15 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841(2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts

applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-406 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams* ). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8 (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652 (2004).

In *Gill v. Mecusker*, 633 F.3d 1272 (11th Cir. 2011), the Eleventh Circuit clarified how the federal habeas court should address the "unreasonable application of law" and the "unreasonable determination of facts" tests.  The court acknowledged the well-settled principle that summary affirmances, such as the Florida First District Court of Appeal's in this case, are presumed adjudicated on the merits and warrant deference. *Id*. at 1288 (citing *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 784–85 (2011), and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir.2002)). "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion. *Id*. at 1291 (citing *Harrington*, 131 S.Ct. at 784).  Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its conclusion." *Id.* at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244–45 (5th Cir.2002) (summarizing the emerging circuit split)). The Eleventh Circuit concluded that district courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning." *Id.* at 1291. In short, the court stated, "the statutory language focuses on the result, not on the reasoning that led to the result."  *Id.*

In light of *Gill,* the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the

trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it. *Id*. at 1292. A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable. *Gill*, 133 F.3d at 1290.

Because the Petition alleges ineffective assistance of counsel, a review of the applicable law is necessary. Under *Strickland v. Washington*, 466 U.S. 668, 677-78 (1984), to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental processes underlying the strategy." *Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en banc). "No lawyer can be expected to have considered all of

the ways [to provide effective assistance]." *Id*.

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*. When, as here, the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington* 131 S.Ct. at 786. The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1). As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785 (quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 786.

When faced with an ineffective assistance of counsel claim that was denied on

the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*.  So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*.  Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted.  *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one."  *Id.*  at 788.   When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Id*.  Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

## DISCUSSION

***Claim (1): Trial counsel was not ineffective for failing to call witness Natacha Hooker on his behalf***.

Petitioner claims that his trial counsel was ineffective for failing to call Natacha Hooker ("Hooker") to testify at trial as a witness on his behalf. (Doc. 1 at 5-7.) According to Petitioner, his trial counsel did not attempt to secure Hooker as a witness,

and despite Hooker's presence at the courthouse on the day of trial, the assistant state attorney dismissed her. Petitioner contends that Hooker was the only witness who could testify about what happened on the night of his arrest. Petitioner says that Hooker's testimony would have shown that Petitioner did not commit aggravated assault on a law enforcement officer.

Petitioner raised this claim in his post-conviction motion pursuant to Fla. R. Crim. P. 3.850. In rejecting this claim on post-conviction review, the state court explained:

> "As to grounds (A) and (B), Defendant alleges that trial counsel was ineffective for failing to move for a continuance to find the victim Natacha Hooker and call her at trial as a defense witness. According to Defendant, Ms. Hooker's testimony would have shown that: (1) Officer Byrd unlawfully entered the residence; (2) Ms. Hooker observed Defendant turning to face Officer Byrd when Officer Byrd shot him; (3) Defendant never made a threatening gesture toward Officer Byrd; and, (4) she did not feel threatened by Defendant.
>
> In order to state a facially sufficient claim for failure to call a witness at trial, the movant must allege the following: (1) the identity of the potential witness, (2) the substance of the witness's testimony; (3) an explanation of how the omission of the testimony prejudiced the outcome of the case; and, (4) a representation that the witness was available for trial. *Leftwich v. State*, 954 So. 2d 714, 714 (Fla. 1 st DCA 2007)(citing *Nelson v. State*, 875 So.2d 579, 583-84 (Fla. 2004)). Defendant has provided this information. However, the record reflects that Defendant agreed with counsel's decision not to call this witness at trial. Because Defendant agreed with counsel's decision, it was not error for counsel not to call Ms. Hooker as a defense witness. Accordingly, the claim raised is without merit. "

(Doc. 13-5 at 171-72.)(internal citations omitted).

In the habeas corpus context, "[c]omplaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative." *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980). A failure to

call witnesses by a habeas petitioner's trial counsel is the type of strategic decision by trial counsel a federal court will not entertain on habeas review.  *Waters v. Thomas,* 46 F.3d 1506, 1512 (11th Cir.1995)(*en banc*)("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we seldom, if ever, second guess.")

On this record, the Court concludes that Petitioner has failed to establish any deficiency in counsel's performance.  At trial, counsel for Petitioner announced that he would not call Hooker as a witness, and that Petitioner was aware that she would not be called and was in agreement with that decision.  (Doc. 13-3 at 58-59.)  Because the record reflects that Petitioner agreed with counsel's strategic decision at the time of trial Petitioner has not demonstrated either deficiency or prejudice under *Strickland*.

Petitioner claims in his reply that he never agreed with his counsel not to call Hooker and that the judge never asked Petitioner at trial whether he agreed with counsel's decision.  (Doc. 16 at 4.)  The trial transcript, however, reflects the following discussion between Petitioner's counsel and the Court with regard to the decision not to call Hooker as a witness. Petitioner's counsel said:

> Ms. Stacy: Your honor excuse me. I think we can save everyone some time. We've decided we are not going to call Natacha Hooker. We have discussed that with our client, Mr. Gaddy. He's aware that we had her under subpoena; he's aware that she is in the hallway. We have advised him we do not intend to call her, and he's in agreement with that, so we can just stop this conversation.

Doc. 13-3, pp. 58-59.  Whether the Petitioner remembers this discussion or not is not the issue. The fact remains, the transcript clearly reflects that Petitioner's attorney advised the Court of the decision not to call Hooker as a witness while the Petitioner

*Case No: 1:13-cv-158-MP-GRJ*

was present in the courtroom and before the trial concluded. There is nothing reflected in the record suggesting that Petitioner objected to his counsel's decision or advised the trial court that he was not in agreement with the decision as his counsel represented to the Court.

Accordingly, Petitioner has not shown that the state court's rejection of this claim on the merits was contrary to, or an unreasonable application of, federal law and, therefore, habeas relief is due to be denied as to this claim.

### *Claim (2): The evidence presented at trial was sufficient to prove that Petitioner committed aggravated assault on a law enforcement officer.*

Petitioner argues that his actions were "insufficient to prove the *corpus delicti* of aggravated assault on a law enforcement official existed." (Doc. 1 at 8-10.) Petitioner says that the elements of aggravated assault on a law enforcement officer were not proven, specifically that the State had not shown *corpus delicti*, or that "a harm had been suffered of the type contemplated by the charges...and that such harm was incurred due to the criminal agency of another."

As a preliminary matter, Petitioner's claim is procedurally barred. While he attempted to raise this claim in his post-conviction motion pursuant to Fla. R. Crim. P. 3.850, he failed to raise the issue in his direct appeal as required. In ruling on Petitioner's 3.850 motion, the trial court said that Petitioner could not challenge the sufficiency of the evidence underlying his conviction through a Rule 3.850 motion, especially given that he had a direct appeal. The First DCA affirmed the trial court's ruling *per curiam* without written opinion.

Because Petitioner only raised this claim in his post-conviction motion and not on

direct appeal, Petitioner has failed to fairly present this claim through one complete round of state court review and therefore the claim is procedurally defaulted. *Bailey*, 172 F.3d at 1303. Moreover, Petitioner has not demonstrated cause and prejudice for the default or a miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Accordingly, because the claim is procedurally defaulted, the Court cannot grant relief on this basis.

Even if this claim had been exhausted, however, federal habeas relief is still not warranted. When reviewing a claim of the sufficiency of the evidence on federal habeas review, the Court is required to view the evidence in the light most favorable to the state and determine whether any rational trier of fact could have found proof beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "In determining whether the facts of a particular case satisfy the *Jackson* standard, it is necessary to refer to the essential elements of the crimes as defined by state law." *Wilcox v. Ford*, 813 F.2d 1140, 1143 (11th Cir. 1987) (citations omitted.)

Aggravated assault on a law enforcement officer is governed by Fla. Stat. § 784.07(2)(c). The Florida Supreme Court pattern jury instructions for aggravated assault on a law enforcement officer provide as follows:

> "To prove the crime of aggravated assault on a law enforcement officer, the State must prove the following seven elements beyond a reasonable doubt[...]
>
> 1. (Defendant) intentionally and unlawfully threatened, either by word or act, to do violence to (victim).
>
> 2. At the time, (defendant) appeared to have the ability to carry out the threat.
>
> 3. The act of (defendant) created in the mind of (victim) a well-founded fear that violence was about to take place.

> *Give 4a or 4b as applicable.  If 4b is alleged, give the elements of the felony charged.*
>
> 4. a.  The assault was made with a deadly weapon.
>
> 4. b.  The assault was made with a fully-formed, conscious intent to commit (felony charged) upon (victim).
>
> 5.  (Victim) was at the time a law enforcement officer[...]
>
> 6.  (Defendant) knew (victim) was a law enforcement officer[...]
>
> 7.  At the time of the assault, (victim) was engaged in the lawful performance of [his][her] duties."

Petitioner argues that the State failed to introduce evidence to satisfy the first element, which requires proof that he intentionally and unlawfully threatened by word or act to do violence towards the law enforcement officer.  Viewing the testimony in the light most favorable to the prosecution, however, the jury heard testimony from Officer Byrd that Petitioner "[turned] around from the door, [took] a step towards [him]" while holding a knife in his hand, and stated "come on, man," while he stepped towards Officer Byrd.  Officer Byrd testified that despite directing Petitioner to drop the knife the Petitioner refused.  Officer Byrd further testified that Petitioner was holding the knife so that the sharp end was pointing towards Officer Byrd and that Petitioner began to move towards him.  (Doc. 13-3 at 8-9.)

There is little question that based on Officer Byrd's testimony, a rational jury could infer the essential elements beyond a reasonable doubt of the crime of aggravated assault on a law enforcement officer. Thus, federal habeas relief is not warranted as to this claim.

*Case No: 1:13-cv-158-MP-GRJ*

*Claim (3): The trial court did not violate Petitioner's due process rights by playing the 911 phone call made by Natacha Hooker.*

Petitioner's final claim for habeas relief is that the State either knew or should have known that playing Hooker's 911 phone call at trial violated Petitioner's due process rights. (Doc. 1 at 11-13.) Petitioner says that the State made two errors: (1) the State submitted Hooker's emergency phone conversation where she described Petitioner as intoxicated, despite a lack of evidence showing that he was drunk; (2) the State knew that Hooker would testify favorably for Petitioner that she was irate and emotionally out of control, but the State had her dismissed as a witness.

The state trial court addressed this claim in Petitioner's post-conviction motion and analyzed it as a claim raising both *Giglio* and *Brady* violations:

> "As to ground (G), Defendant alleges that the State committed a *Giglio* or *Brady* violation by introducing the victim's 911 call at trial and by not calling the victim as a witness at trial. There is nothing alleged under this ground which constitutes either a *Giglio* or *Brady* violation.
>
> To establish a *Giglio* violation, the defendant must show that: (1) the testimony given was false; (2) the prosecutor knew the testimony was false; and (3) the statement was material. *Rodriguez v. State*, 39 So. 3d 275, 285 (Fla. 2010). Here, the alleged false testimony was the emergency call by the victim to law enforcement. According to Defendant, the victim lied during the call when she said that Defendant was drunk and being violent. Defendant is not actually challenging the veracity of the victim's testimony, because she did not testify at trial. Rather, he is challenging the sufficiency of the evidence used to convict him. A defendant cannot challenge the sufficiency of the evidence underlying his conviction through a rule 3.850 motion, especially where there has been a direct appeal. *Betts*, 792 So. 2d at 590; *see also Johnson*, 593 So. 2d 206 at 208; *Jones*, 446 So. 2d at 1061-62.
>
> In order to make a facially sufficient *Brady* claim, the defendant must prove the following: (1) that the State possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant did not possess the evidence nor could he have obtained it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and, (4) that had the evidence been disclosed to the defense, a reasonable possibility exists that the

outcome of the proceeding would have been different. *Robinson v. State*, 707 So. 2d 688, 693 (Fla. 1998). Here, Defendant does not allege that he was unaware of the call prior to trial. He merely challenges the statements contained in the call. This is not a properly raised *Brady* claim. Accordingly, the claim raised is without merit."

(Doc. 13-5 at 174-75).

The claim Petitioner now raises in his petition is somewhat vague and unclear. Petitioner claims that the state violated his due process rights by introducing Hooker's 911 phone call. While Petitioner cited both *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1193 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972) in his post-conviction motion, he makes no mention of *Brady* or *Giglio* in the instant petition. However, to the extent that Petitioner intended to raise these claims (without citing *Brady* or *Giglio*) neither claim provides a basis for relief.

To establish a *Giglio* violation of due process, the petitioner must show that certain testimony (1) was used by the state, (2) was false, (3) was known by the state to be false, and (4) was material to the guilt or innocence of the defendant. *Giglio*, 405 U.S. at 150; *see also, United States v. Agurs*, 427 U.S. 97, 103–04 (1976); *United States v. Jones*, 614 F.2d 80, 82 (5th Cir.1980) ("[F]or perjury by a witness to constitute grounds for relief appellant would have to show that the Government knowingly used the perjured testimony."). The main flaw with Petitioner's argument that the State committed a *Giglio* violation, however, is that the State did not present Hooker's sworn testimony at trial. Instead, the State submitted the tape recording of Hooker's emergency 911 call, which was neither sworn nor testimonial. Accordingly, because the State did not introduce perjured sworn testimony there could not be a *Giglio* violation.

To the extent that Petitioner intends to argue, as he did in state court on his post

conviction motion, that the State committed a *Brady*[2] violation by suppressing Ms. Hooker's testimony, *Brady* simply does not apply.

A *Brady* violation occurs when material evidence that is favorable to the accused is suppressed by the State. *Banks v. Dretke*, 540 U.S. 668, 691 (2004). The State did not fail to disclose Hooker's testimony. There is no dispute Petitioner knew about Hooker's testimony and was provided with the 911 emergency call prior to the trial. Indeed, prior to trial Petitioner's counsel had an opportunity to depose Hooker. Further, during the trial Hooker was subpoenaed to appear at trial by Defendant's counsel and was waiting in the hallway to testify. Hooker did not testify and left the courthouse only after Petitioner's counsel announced to the Court during a break in the State's case that the defense would not call Hooker to testify. (Doc. 13-3 at 58-59.) Thus, to the extent the assistant state attorney dismissed Hooker from the courthouse, it was only after Petitioner's counsel decided not to call Hooker as a witness. Simply, put, the State did not fail to disclose exculpatory evidence under *Brady* but rather did nothing more than elect not to call a witness, who had been fully disclosed to Petitioner before trial. Accordingly, Petitioner fails to raise any facts that arguably could support a *Brady* claim.

Reviewing Petitioner's claim liberally, the gist of his claim is that his constitutional rights were violated because the tape of the 911 emergency call was introduced at trial. To the extent that Petitioner is attempting to argue that the tape is inadmissible hearsay and should not have been admitted, there is no merit to this argument because this Court cannot correct violations of state evidentiary rules. *Corn v. Zant*, 708 F.2d 549

---

[2]*Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1193 (1963).

(11th Cir. 1983), *overruled on other grounds by Corn v. Kemp*, 772 F.2d 681 (11th Cir. 1985); *Bryson v. Alabama*, 634 F.2d 862 (5th Cir. 1981). A federal court is limited to addressing the aspects of the trial that affect the petitioner's federal constitutional rights. *Donnelly v. Dechristoforo*, 416 U.S. 637, 94 S.Ct. 1868 (1974); *Passman v. Blackburn*, 652 F.3d 559, 567 (5th Cir. 1981) *cert. denied*, 455 U.S. 1022, 102 S.Ct. 1722 (1982). Whether or not the state trial court erroneously admitted the emergency 911 tape under Florida's hearsay rules does not raise a constitutional claim and thus may not be addressed in a federal habeas petition.

Alternatively, to the extent that Petitioner contends that his constitutional right to confront the witness was violated when the State introduced into evidence the emergency 911 call, there is no merit to this claim. As a starting point Petitioner never raised in his direct appeal or in his 3.850 motion a freestanding claim that his confrontation clause rights were violated and therefore any such claim would be unexhausted.

Even assuming, however, that Petitioner had exhausted such a claim the claim would fail for several reasons.

The Sixth Amendment provides that "i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him." This clause bars the admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36 (2004).

First, Hooker's statements during the emergency 911 call are not testimonial. In *Davis v. Washington*, the Supreme Court held that statements made during a 911 call

were not "testimonial" for the purposes of the confrontation clause because the victim was describing events as they were happening. 547 U.S. 813, 126 S.Ct. 2266 (2006). Thus, because the statements Hooker made during the emergency 911 call were not testimonial, as a matter of law, there could not be a confrontation clause violation.

Second, Hooker was not an unavailable witness who Petitioner did not have a chance to cross-examine. During the trial, Hooker appeared pursuant to a subpoena issued by Petitioner and therefore was not "unavailable for trial." Lastly, Petitioner was afforded the opportunity to cross-examine Hooker when Petitioner's counsel deposed Hooker prior to trial.

Accordingly, for these reasons there is no merit to Petitioner's argument that his constitutional rights were violated when the State introduced into evidence the emergency 911 call Hooker made to law enforcement.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED:**

1. The Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, Doc. 1, should be **DENIED**.

2. A certificate of appealability should be **DENIED.**

**IN CHAMBERS** this 12th day of August 2015.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.